Peck, J.,
concurring:
I concur in the opinion of the court, but as I have some views in relation to the case not expressed in that opinion, I shall proceed to state them.
*318 This is a motion for a new trial, for newly-discovered evidence, made by the defendants on the 13th day of December, A. D. 1871; the judgment in the case having been rendered on the 22d day of March, A. D. 1869. The case is now before the Supreme Court on an appeal, which was allowed and taken on the 3d day of June, A. D. 1869.
The motion is founded upon the second section of the act entitled “An act to provide for appeals from the Court of Claims, and other purposes,” approved June 25,1868.
The motion alleges that injustice has been done the United •States because the judgment was rendered against them for the proceeds of certain cotton, which cotton never came into the possession or under the control of any authorized agents of the defendants; and the proceeds of which are not and never were' in their Treasury.
Appended to the motion is filed the affidavit of Alexander Johnston, which states that he is employed in the Department of Justice to defend this suit in the Court of Claims; and that the motion for a new trial is based upon evidence (that is, affidavits) tending to show, that there was no officer or agent of the United States at Atlanta authorized to take or receive the claimant’s cotton at the time it is alleged to have been taken; which evidence he, Johnston, has reason to believe was discovered since the trial of the case. I have given the language of the motion- and of Johnston’s affidavit in, or almost in, their very words.
The affidavits in support of the motion Mr. Johnston calls “ evidence,” I suppose, because the statute under which he moves for the new trial requires that the motion should be sustained by u such evidence ” as shall reasonably satisfy the court that fraud, wrong, or injustice has been done to the United States by its judgment. Calling such an affidavit evidence does not ■make it so. Evidence is a word of technical force, and is considered by courts as differing from affidavits. Evidence authorizes us to render a judgment; affidavits never do. When it is considered that the favor which is granted by the act in question to the defendants extends to new trials in their behalf only, at any time within two years after final judgment, whether in this court or on appeal, I think it was contemplated that something more than ex-parte affidavits should be required to satisfy the court of the propriety of revoking a judgment, and *319 compelling a claimant to a renewed contest, to continue perhaps for years.
To grant a new trial two years after judgment, the most conclusive evidence should be required, such as would raise a strong-presumption, if not an absolute conclusion, that a different judgment would certainly be the result of another trial.
This view is sustained by the late Attorney-General Hoar, who addressed a letter to the Senate, under date of July 2, 1870, in reference to the practice of the Court of Claims, in which he says that the section of the statute granting new trials, on motion in behalf of the United States while a case is pending on appeal, or within two years after judgment, “ does not, in terms, require the court to grant a new trial npon newly-discovered evidence simply affecting the merits of the case.”
Affidavits taken ex parte are not evidence, though for the purposes of a new trial in State and United States circuit courts, when the motion is interposed between a verdict and judgment, or is made at the same term of the trial, they are sometimes so regarded; but I do not believe they would be considered “ evidence,” or heard as such, in any court npon a motion made after the lapse of a term.
In the circuit courts of the United States conditions are often imposed npon the allowance of a new trial, especially when it is granted upon the ground of newly-discovered evidence. Costs have to be paid. The party having the judgment is permitted to be present and cross-examine the newly-discovered witnesses; he may offer countóí-depositions, &c. (See 1 Curtis • C. C. R., pages 19 and 20; 2 ditto, pages 386, 387, and 389; 3 Wood & Minot, page 349.)
I believe this court, where a ¡new trial is asked for by the defendants, on the ground of newly-discovered evidence after the lapse of a term, under a statute so partial and anomalous as that now invoked, should compel the mover to give the claimants a reasonable notice of the time and place where the new witness to support the motion is to be examined, so that he may be present and cross-examine. The motion should always be made in term time, or with the permission of a judge in vacation, and should state the new facts to be proved, with every material circumstantiality. •
*320 Isay nothing about the question of diligence, as that question is discussed by Judge Nott. .
By what authority, under the law, Mr. Johnston or any other person is employed by the Department of Justice “to defend a suit” which has long since passed into judgment, I shall not stop to inquire, though I believe no other person than he who tried the case, or the Assistant Attorney-General assigned to the business of this court, can properly make an affidavit for the purposes of this motion which the court should consider.'
Mr. Johnston did not try the case, nor assist in the preparation of it, and cannot say what knowledge the gentleman who represented the defendants at the trial did or did not have in the premises. It is quite impossible he should.
Mr. Johnston says he has a belief, without naming any reason or fact for its foundation. This is not sufficient. His unsupported belief, under the circumstances, is mere opinion or conjecture. He does not even base his belief on hearsay, and his affidavit, as matter of proof, does not approach the dignity of hearsay evidence, poor and worthless as that is. I cannot credit him with infinite knowledge in judicial matters, and act upon that assumption. The law requires me to act upon facts, established by proof alone. Suppose an attempt were to be made to assign perjury upon such an affidavit, could it be so done as to convict the maker ? Has the affidavit any allegation of substance in it that can be disproved Ü Can any one say that the maker of the affidavit has no such belief as he asserts ? Had he sworn that he believed in some fable, while all might marvel at his credulity, no one could swear to contradict his assertion. This may be an absurd illustration, butilo more absurd than it would be for the court to grant a new trial'upon a showing so irrational as mere unfounded belief. It is said that, because the defendants are impersonal, they may be represented in court in any intangible way that their counsel may choose to resort to, and that nothing in particular should be required of them; in other words, that- the defendants are outside of the law and precedents, and that these are not to control against their convenience.
I do not understand that courts of justice- should vacate long-established judgments, and so deprive parties of their rights and interests upon such shadowy and flimsy pretensions.
If anything would justify this motion, it would be the testi *321 mony of Mr. Hale. That gentleman is now, as before, a legal adviser of the defendants, and has often been present in court before and during the pendency of this motion. He, if any person, knows why Mr. Hade was not examined in this as he was in other cases of a like character moving before the court at the same time. The absence: .of all testimony from Mr. Hale excites suspicion. He might explain many things, and give satisfactory reasons for his omission to take Hade’s evidence. Mr. Hale had the entire management of the trial. To use the language of Judge Curtis in one of the cases cited, “The defendants had the benefit of his honest judgment and acted on it. It is too late for them now to say he judged unwisely. Suppose counsel, having the means of proving a fact, judges it to be immaterial, or not useful to his client, and therefore does not exhibit'the evidence of it. -No one has supposed his client could have a new trial because it turns out that he was mistaken.”
Mr. Johnston can only tell us how great Ms belief is and Ms ignorance of facts; Mr. Hale,,could have- given his knowledge. It is not difficult to find witnesses in throngs who have large belief and but little of that knowledge which is useful-in establishing facts in the trial of a case or the hearing of a motion. Witnesses of this description are not often produced, unless it be to aid an impersonal client:
The defendants being impersonal, and therefore inc£fpable of deposing, I would apply the same rule that is applied to other corporations which are also impersonal, viz, that the best evidence which the nature of the case affords shall be produced, the same rule that the law applies to cases where the party should himself adjure. If the best evidence, such as the oath of the party, cannot be had, then substitute secondary evidence, which, in a case like -this,' should come from the person who tried the case or from the Attorney-General;- and not permit the rule to be so diluted that a person who is professed without information shall take the place of better testimony in the power of the defendants to produce.
There has not been any evidence offered to support that part of the motion which denies that the proceeds of the claimant’s cotton are in the defendants’ Treasury. This material fact appears to have dropped out of the case.
I now propose to examine the affidavit of Mr. Hade, and *322 compare it witb bis deposition taken recently by tbe United States, to be used by them in tbe case of one Mattison, pending here. In bis affidavit, E. Hade states that be was tbe only person authorized to take or seize cotton at Atlanta from about tbe 8th of September, 1864, until be left that place, which was on tbe 12th of November following, and that neither claimant’s cotton, nor any other, was seized or taken bybim after tbe 26th of October in the. same year. He says be is assured of this fact, because be was at Atlanta from tbe 8th of September, 18Q4, “allthe time,” “and continuously bad bis office open for business.” Tbe last fact might be as be states it, though be was not present at bis office. The affidavit of Jacob Hade supports these statements, and is not otherwise material. On referring to tbe deposition of E. Hade, filed by tbe defendants witb bis affidavit, and taken on tbe 16th of October last, I find at the commencement of tbe deposition these questions and answers:
“Being interrogated by Alexander Johnston, for tbe United States, tbe witness says:
“ Question. What position, if any, did you occupy in tbe United States Army in 1864?
“ Answer. I was captain and assistant quartermaster.
“ Question. Where were you stationed in the months of September, October, and November, in the year 1864?
“ Answer. I was at Marietta and Atlanta, in Georgia, and at Chattanooga, in Tennessee, during tbe months of September, October, and November, 1864.
“ Question. When did you enter Atlanta, Georgia?
“ Answer. About tbe 4th of September. I went in on tbe first train that run in on the Western and Atlantic road after tbe evacuation by tbe rebels.”
Tbe question here arising is, how Mr. Hade could have been at Atlanta “all the time,” from tbe Sth of September until tbe 12th of November, if he was, as be states in bis deposition, a part of that lime at two other places, viz, Marietta, Georgia, and Chattanooga, Tennessee. I shall not attempt to explain what is unexplainable.
These contradictory statements may pass unheeded by those who desire to accomplish an end without regard to the obstacles interposed; but they cannot be explained consistently witb a proper regard for tbe truth. Test tbe witness by bis own *323 statements, in the affidavit and the deposition, and be is unworthy of credit. He is so impeached that no court would be justified in granting a new trial and revoking a judgment rendered three terms since, and now on appeal, upon the affidavit of a man who swears so equivocally.
Many conjectures may be stated as to the reasons which may have influenced Mr. Hale not to examine this witness. It is possible he thought it would be imprudent to do so. He might have been unwilling to trust to his telling. He might have thought, as I do, that such testimony from him as is now offered would be only surplusage and of no value to his clients, the same facts, in substance, having been stated by the witnesses of the claimant. A cross-examination of Mr. Hade, Mr. Hale might have believed, would elicit facts dangerous to his side of the case; at best it could only establish a fact already abundantly proven by the witnesses of claimant.
The question of laches has been brought to the notice of the court, upon the assumption that the United States may wholly disregard all diligence and duties exacted in legal proceedings, without regard to the rules of the common law or of the court, as used and applied to the claimants. This preposterous theory cannot well be confuted by authority, for it has never before entered into the mind of any practitioner to advance a similar theory in any other court. If this theory of the law could by possibility be correct, this court has been acting ever since its organization under very erroneous impressions •, and if it should now be adopted in. practice, the defendants would be the masters of the court and could defy it. Justice, if it ever came to the claimants, would come by the favor of the Attorney-General, and not by the aid of this tribunal. The judges here, like the insensible pieces upon a chess-board, would be moved hither and thither by the representative of the United States as he should in his pleasure direct. The power, honor, and dignity of the court, by the recognition of such a principle as law, would be lost in obloquy.
The statute authorizing this motion refers to fraud, wrong, or injustice growing out of some act of the claimant. Here the injustice complained of is the decision of the court upon the law and facts of the case; the remedy, if any for that, is' by appeal.
There is no reason assigned in the motion for a new trial, *324 except that injustice bas been, done; no word about fraud; and unless you confound the meaning of the words, to discuss fraud is irrelevant to the issue presented by the motion.
Diatribes against fra.ud in general, or frauds in particular, may show a mind addicted to moral tendencies, but they have no application to this motion. Fraud is not complained of or alluded to in the motion; and if it were, it could not be established by inference, but should be proved. It is nowhere stated or shown that the claimants attempted to practice any fraud, either before or on the finding of facts for an appeal, or subsequent to the appeal. The facts found after the appeal were found, if not at the instance of the defendants, at least by their consent.
The claimant made his proofs as other claimants have done, and there is no allegation that perjury was committed by his witnesses, or of fraud by himself. It is nowhere pretended by the claimant that Captain Hade entered the cotton on his books or receipted for it; of this omission he complains; his witnesses expressly depose to the contrary, and, as has already been stated, they conclusively establish the very facts in effect that Captain Hade says he would swear to. If any injustice exists in the case as it now stands on appeal, it was perpetrated by this court.
All assaults made upon the case because of injustice done, are assaults upon the integrity or capacity of. this court which decided the case. The defendants nowhere allege that the claimant of himself, or by collusion with others, acted fraudulently. This chimera is not theirs. ' Their argument and position is, that the court erred in giving judgment, because the cotton was not traced through Captain Hade, he being, as he says, the only officer at Atlanta authorized to act in that regard.
This was .the ground of defense when the case was last presented for hearing and judgment. A majority of the court disagreed with the defendants’ counsel, and being moreover satisfied that the United States had received the proceeds of claimant’s cotton into their Treasury, gave him a judgment.
The defendants’ counsel now seek by this motion, charging not fraud, but injustice, to obtain are-argument. This is to my mind the whole scope of the motion.
Fraud is deception practiced by the party; injustice is the *325 fault or error of tbe court. They are not equivalent wprcls, in substance, or by tbeir context in the statute, and any attempt to give them that constructions futile. Injustice may be done to the claimant or defendants without anjr attempt at fraud by either. Fraud is always the result of contrivance and deception. Injustice may be done by the negligence, mistake, or omission of the court itself.
It may be that this court decided erroneously, by holding that it was not indispensable that the claimant should trace his cotton through the books of Captain Hade, provided they were otherwise satisfied that its proceeds reached the public Treasury. These questions are fairly presented on the record, and the Supreme Court will decide them, and so determine the right. If this motion should be granted, it would not change the character of the question, but would result in injurious delay to the claimant.
The presence of Captain Hade in or his absence from Atlanta is of no consequence, except as it tends to establish the fact that he did not receive the cotton. Of what consequence, then, is the proof as to his absence 1 Courts never grant new trials because of a conflict of testimony as to an immaterial fact, or even as to a material fact, for as to the weight or preponderance of evidence, the jury decides, and their decision is very seldom disturbed, and only in cases where they have acted flagrantly.
The design of the second section of the act discussed in this motion was to confer upon the court authority to grant new trials in certain cases. The act requires the court to be satisfied from evidence that fraud has been perpetrated, or that wrong and injustice have been done, and in such cases gives the court a discretion, to be exercised for the purposes of justice. The word u may ” is sometimes construed to mean “ shall ” when it is used in conferring authority upon ministerial officers, but no such construction obtains where the word is used in enlarging the powers of a court, for the reason that it is presumed that courts will exercise their powers for the promotion of justice so far as it is necessary so to do. This court might grant anew trial for the purpose of revising its own judgment, if satisfied it was erroneous, while an appeal therefrom was pending in the Supreme Court; but such an exercise of discretion would be unwarranted, as neither justice to the party nor the- public benefit would be promoted thereby. The power to grant new *326 trials, like other' powers conferred upon courts, is exercised to further the ends of justice, and the court must be satisfied that the exercise of its power will have that effect before it will act. Such a power has no resemblance to a mandate, to be exercised without discretion.
That the Attorney-General did not believe that the word “ may,” in the statute now under consideration, meant “ shall,” is found in the fact that an application was made by him to Congress requesting that a law should be passed substituting “ shall” for “may,” in the law as it then existed and now exists in the statute allowing new trials. See this bill accompanying the letter of July 2, already referred to.